While I agree with much of what Judge Crawley says in his dissenting opinion, I am concerned about the more "threshold" legal and factual issues relating to whether the father was truly "voluntarily underemployed," at least within the meaning of that term as it is used in Rule 32(B)(5), Ala. R. Jud. Admin. Thefather was fired; he did not resign. Moreover, he was fired largely because he remarried.
Certainly, nothing in our law prevented the father from remarrying. The mother and the main opinion argue, however, that the father is voluntarily underemployed because, if he had just waited four more months to remarry, he would not have been fired. Even if the law would require a divorced parent to postpone a marriage to a new spouse in order to retain a higher paying job and therefore retain the ability to make higher child-support payments — a proposition that I am not prepared to accept, at least not under the circumstances presented in this case — that argument is based on speculation as to what the father's employer would have done if the father had merely postponed his marriage. The father did not know at the time he remarried — and even today we do not know — whether the father would have retained his job had he postponed his marriage.
Granted, this is a case in which the father may have made a mistake in his employer's eyes by temporarily keeping his new marriage a secret from the employer. I do not believe, however, that this kind of "mistake" was intended to serve as a basis for a finding of voluntary underemployment under Rule 32(B)(5). Under the circumstances leading up to the termination of the father's employment, and considering the father's subsequent efforts to earn a living in a real-estate business and by working nights in a department store, I do not believe the fact that the father was fired when his employer learned that he had remarried can lead to the conclusion that the father is "voluntarily underemployed" as that term is used in Rule 32(B)(5).
I also am concerned about the suggestion in the main opinion that a decision not to reduce the husband's child-support obligation, despite the reduction in the husband's earnings, could be justified based upon the husband's ability to withdraw funds from his retirement account. The husband's retirement account was an asset or property of the marital estate. This asset was awarded by the trial court to the husband at the time of the parties' divorce; it was part of an agreed-upon distribution of the parties' marital estate. Property divisions in divorce judgments are final. "A court cannot modify property provisions, except to correct clerical errors, after 30 days from the final judgment. The property division of a divorce judgment is not subject to being modified on account of changed conditions. Culverhouse v. Culverhouse, 389 So.2d 937
(Ala.Civ.App. 1980)." Hamilton v. Hamilton, 647 So.2d 756, 759
(Ala.Civ.App. 1994). The parties entered into their settlement agreement, and the trial court entered its divorce judgment, providing for the final distribution of the parties' property even as the parties knew or should have known that their agreement regarding, and the court's award of, alimony and child support was subject to future material changes in the financial needs and capabilities of the parties involved. See Posey v.Posey, 634 So.2d 571, 572 (Ala.Civ.App. 1994).
For the foregoing reasons, I respectfully dissent. *Page 992